**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JAMES PORTER MAY,

    Plaintiff,

vs.                                                      CASE NO. 3:08-cv-1117-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) disability payments. 42 U.S.C. § 405(g). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #13, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #15, D's Brief). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated August 17, 2009 (Doc. #16). The Commissioner has filed a transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).

Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the written record. For the

reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

In the instant action, the ALJ found Plaintiff protectively filed an application for DIB on September 22, 2004 and an application for SSI on December 14, 2004 (Tr. 15; *see also* Tr. 59-60).[1] Plaintiff alleged a disability onset date of September 2, 2001 (Tr. 15, 60). Plaintiff's applications were denied initially and upon reconsideration. Thereafter, Plaintiff requested an administrative hearing, which was ultimately held on July 25, 2007 in Jacksonville, Florida before administrative law judge (ALJ) JoAnn L. Anderson (Tr. 439-484). Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Charles K. Heartsill. Plaintiff was represented during the underlying administrative proceedings by Ms. Susan A. Butler, a non-attorney representative (*see* Tr. 15, 50-51). ALJ Anderson issued a hearing decision denying Plaintiff's claims for DIB and SSI on September 27, 2007 (Tr. 12-25). Plaintiff requested review of the hearing decision by the Appeals Council (AC); however, the AC denied Plaintiff's request on October 7, 2008 (Tr. 4-6), making the hearing decision the final decision of the Commissioner. Plaintiff's current counsel of record, Mr. L. Jack Gibney, Esq., filed the instant action in federal court on November 21, 2008 (Doc. #1).

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND THE STANDARD OF REVIEW

Plaintiff is entitled to disability benefits if he is unable to engage in substantial gainful

---

[1]The Court was unable to locate copies of either application in the record. The case development record found at Tr. 59-62, indicates the protective filing dates.
    The Court would suggest the Commissioner remove the portion of the record that pertains the application of a claimant other than the Plaintiff in this case (*see* Tr. 423-38, Application for Retirement Insurance Benefits of James Joseph Lupinetti).

activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505.[2] The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ found Plaintiff met the Social Security Act's insured status requirements through June 30, 2007 (Tr. 17).[3] At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 2, 2001 (Tr. 17). At step two, the ALJ found Plaintiff had severe impairments identified as "status post right knee arthroscopic surgery; mild degenerative changes of the cervical and lumbar spines; right carpal tunnel syndrome; and dysthymic disorder" (Tr. 17). At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ assessed Plaintiff had the residual functional capacity (RFC) to perform light work with limited pushing/pulling of foot controls and occasional climbing, balancing, stooping, kneeling, crouching or crawling (Tr.19). The ALJ stated Plaintiff is to

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2009 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

[3]Interestingly, the record reflects a date last insured of March 31, 2007 and June 30, 2007 (*see* Tr. 60, 65). There are no challenges to the actual date Plaintiff was last insured for DIB.

3

avoid working with heights or on ladders or scaffolds and is limited to simple, routine tasks with limited contact with the general public (Tr. 19).

At step four, the ALJ determined Plaintiff could not return to his past relevant work (PRW) as a kitchen helper or tractor trailer truck driver (Tr. 23). However, at step five, based in part on the VE's testimony, the ALJ determined that, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform" (Tr. 23). Thus, the ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's alleged onset date of September 2, 2001 through the date of his decision (Tr. 24).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court

must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court will not re-weigh the evidence, but will determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen v. Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## BACKGROUND AND ANALYSIS

Plaintiff, who was born April 1, 1955 (Tr. 448), was fifty-two years old at the time of the administrative hearing. Plaintiff testified he finished the eighth grade and at the time of the hearing was involved in adult learning programs and was working toward a GED

(general equivalency diploma) (Tr. 449). Plaintiff previously working as a truck driver, dishwasher and Salvation Army bell ringer (Tr. 450-51). Plaintiff testified he was fired from his job as a truck driver after his driver's license was suspended because of his ongoing logbook problems (Tr. 452). Plaintiff indicated on his Disability Report - Adult that his ability to work was limited due to problems with his back and knees, depression, stress, and a myriad of other ailments (Tr. 79).

On appeal, Plaintiff presents two arguments. First, Plaintiff contends that the ALJ erred by not including all of Plaintiff's limitations in the hypothetical questions presented to the VE (P's Brief at 6). Specifically, Plaintiff argues the ALJ failed to include any limitations regarding his mental health issues and his carpal tunnel syndrome, even though the ALJ found these impairments to be severe (P's Brief at 6-7). Second, Plaintiff claims the ALJ erred by not fully and fairly developing the record in the case (P's Brief at 8).

Defendant responds that contrary to Plaintiff's argument, the ALJ's decision is supported by substantial evidence and decided by the proper legal standards (D's Brief at 4). Defendant asserts the ALJ properly found no evidence in the record that Plaintiff's carpal tunnel caused additional limitations beyond those already included in the ALJ's RFC (D's Brief at 5-6). Furthermore, Defendant claims the ALJ properly presented specific mental limitations to the VE when he asked whether the identified positions involved a significant amount of reading and writing, required communication with the public, and whether the jobs involved simple, routine tasks (D's Brief at 5-6). As to Plaintiff's second issue, Defendant responds that Plaintiff fails to present an argument as to what developments in the record may be needed, and, in any event, the ALJ properly considered the reports completed by the two examining consultants, Dr. Joseph Hartman, Ph.D., and

Dr. John A. Muenz, Jr., M.D. (D's Brief at 8).

Upon due consideration and review of the record, the Court finds Plaintiff's arguments are without merit and addresses the issues below.

**<u>Hypothetical Questions</u>**

Plaintiff argues the ALJ erred by posing incomplete hypothetical questions to the vocational expert. Here, the ALJ found Plaintiff's right carpal tunnel syndrome and dysthymic disorder were among Plaintiff's severe impairments. Plaintiff asserts the ALJ did not include adequate limitations from the mental impairment or the carpal tunnel syndrome in the hypotheticals posed to the VE (P's Brief at 6-7). The Court disagrees.

It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). Therefore, the Court must determine whether the ALJ failed to include any limitations resulting from Plaintiff's severe impairments in the hypotheticals, and if so, whether such failure constitutes grounds for reversal.

The ALJ actually articulated a number of hypothetical questions for the vocational expert to consider and respond (Tr. 476-80). As is typical with this type of questioning, the subsequent scenarios added limitations to the originally stated hypothetical question. In the first hypothetical the ALJ asked the VE to "assume an individual who is 52 years of age with a limited education, prior work experience limited to tractor trailer truck driver, [with work] described as a medium, semi-skilled job" but would be an individual now limited to "no more than light work activity from an exertional standpoint ... also... limited in terms of pushing and pulling ... foot controls with [the] lower extremities, ... [and] also limited to

occasional postural activities such as climbing, balancing, stooping, kneeling, crouching and crawling, and should avoid any work at heights or climbing ladders or scaffolds such as that hazardous condition" (Tr. 476-77). On this question the VE identified jobs within the economy that such an individual could perform (Tr. 477). Specifically, he identified cleaner/housekeeper, microfilm mounter, and odd-piece checker (477-78). The ALJ then asked whether these jobs were dependent on reading and writing skills, required regular communication with the public, and if the jobs could be generally described as involving simple and routine tasks (Tr. 478-79). The VE stated the identified jobs could be demonstrated for learning purposes and were not dependent on reading and writing skills (Tr. 479). The VE also stated the identified work would require communication only with co-workers and supervisors rather than the general public, and involved only simple, routine tasks (Tr. 479).

Review of this evidence clearly demonstrates the ALJ included specific functional limitations arising out of Plaintiff's severe mental impairment of dysthymic disorder. *See Roberts v. Apfel*, 222 F.3d 466, 471 (8th Cir. 200) (functional limitations of "no job requiring frequent, extensive or [constant] reading of written instructions" adequately addressed plaintiff's mental impairments of depression and diminished reading ability); *Jones v. Astrue*, 570 F.Supp.2d 708, 717 (E.D. Pa. 2007) (hypothetical posed to vocational expert that restricted the plaintiff to "simple, repetitive tasks" incorporated the plaintiff's limitations from severe impairment of depression); *Maddox v. Apfel*, 202 F.3d 269 (Table Decision), 1999 WL 1281920 (6th Cir. Dec. 29, 1999) (affirming district court determination that a hypothetical person with the "residual functional capacity to perform simple, low-stress sedentary work that did not entail interaction with the public" described adequate functional

8

limitations for the plaintiff who had severe impairments of panic attacks and depression); *Stout v. Astrue*, No. 3:07-cv-987-J-TEM, 2009 WL 890388 (M.D. Fla. Mar. 31, 2009) (ALJ's hypothetical for plaintiff to avoid work with unusual stress adequately addressed the plaintiff's severe affective disorder that caused mild to moderate difficulties in concentration, persistence and pace); *Kramer v. Soc. Sec. Admin.*, No. 08-15198-DT, 2010 WL 451055 (E.D. Mich. Jan. 28, 2010) (substantial evidence supported the ALJ's determination that no functional limitations arose out of the plaintiff's severe impairment of attention deficit disorder ); *Comins v. Astrue*, No. 5:05-CV-556 (FJS/GHL), 2009 WL 819379 (N.D.N.Y. Mar. 26, 2009) (hypothetical restriction to simple, routine work in a structured environment without significant public contact adequately encompassed the plaintiff's severe depressive and anxiety disorders). Therefore, to the extent Plaintiff asserts the ALJ failed to incorporate appropriate mental limitations in the hypothetical questions asked of the vocational expert, the Court finds Plaintiff's argument fails.

Plaintiff also claims the ALJ erred by failing to include in the hypothetical questioning any restriction related to Plaintiff's carpal tunnel syndrome (P's Brief at 7-8). Plaintiff specifically takes issue with the ALJ's treatment of an asserted limitation on Plaintiff's bilateral reaching abilities (P's Brief at 7-8). Plaintiff seemingly ignores that limiting Plaintiff to light work is an exertional restriction that takes into account Plaintiff's reduced strength in the right arm and hand from the right carpal tunnel syndrome. Defendant correctly notes that Plaintiff's medical reports do not indicate he has lost any function of his upper right extremity that is not already included in the determined RFC (*see* D's Brief at 6-7). For example, Plaintiff was diagnosed with only mild carpal tunnel syndrome as evidenced by the objective motor nerve conduction testing in April 2003 (Tr. 247-49). On January 16, 2003,

Plaintiff himself reported a slight loss of strength lifting objects, but claimed there had been no noted weaknesses or dropped objects the next week (Tr. 256-57).  During numerous examinations in 2003, Plaintiff was found to have good grip strength (Tr. 254, 256, 258). On March 17, 2003, Plaintiff's arm symptoms reportedly improved (Tr. 251).  At some point, Plaintiff began using a brace for his right wrist, which also reportedly helped (*see* Tr. 342). Evidence of Plaintiff's activities, such as mowing his lawn in October 2004 in spite of his carpal tunnel syndrome, support the ALJ's determination of Plaintiff's RFC (*see* Tr. 179). Based on the foregoing, the Court finds the restriction to light work adequately accounts for Plaintiff's limitations stemming from carpal tunnel syndrome.

Accordingly, the Court finds the hypothetical questions set forth for the VE's consideration included adequate limitations to account for all of Plaintiff's severe impairments.

**Full and Fair Record**

Plaintiff argues the ALJ erred by not fully and fairly developing the record in this case (P's Brief at 8).  In this regard, Plaintiff appears to take issue with the ALJ's consideration of reports generated by Drs. Hartman and Muenz.  Defendant responds that Plaintiff fails to present an argument specifying what developments are needed in the record, and further claims the ALJ properly considered the reports completed by the two examining SSA consultants, Dr. Joseph Hartman, Ph.D., and Dr. John A. Muenz, Jr., M.D. (D's Brief at 8). The Court agrees with Defendant.

It is well established in the Eleventh Circuit that the ALJ has a basic duty to fully and fairly develop the record.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d. 731, 735-36 (11th Cir. 1981).  That duty rises to a special level of

ensuring that favorable as well as unfavorable facts and circumstances are elicited when a claimant is unrepresented at the administrative hearing. *Cowart v. Schweiker*, 662 F.2d at 735; *Graham v. Apfel*, 129 F.3d at 1422-23. Further, that duty can extend to ordering additional medical tests and exams, or re-contacting a medical source, *if* a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1512, 404.1517. However, in the instant case, the medical evidence does not contain such evidentiary gaps as would prevent the ALJ from making an informed decision. *See Graham v. Apfel*, 129 F.3d at 1422-23; *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Moreover, Plaintiff was represented by a non-attorney advocate during the underlying proceedings who assisted with the gathering of evidence and actively participated in the administrative hearing.

The burden of proving an alleged disability remains with the Plaintiff throughout the five step sequential evaluation process, only temporarily shifting to the Commissioner at step five to show the existence of other jobs in the national economy which the party seeking disability benefits could perform given that party's impairments. *Bowen v. Yuckert*, 482 U.S. 137 at 146; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Plaintiff is responsible for furnishing or identifying medical and other evidence regarding his impairments. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *also see*, 20 C.F.R. § 404.1512 (the claimant must furnish the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations). As stated in *Bowen*, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137 at 146, n. 5.

In this case, Plaintiff did provide adequate information upon which the ALJ could make an informed decision about Plaintiff's asserted disability. Plaintiff's argument on development of the record is ambiguous at best.

To the extent Plaintiff challenges the ALJ's consideration of the reports submitted by the examining consultants, Drs. Hartman and Muenz, the Court finds no error. Both Dr. Hartman, a psychologist, and Dr. Muenz, a physician, examined Plaintiff at the request of the Office of Disability Determinations for the Social Security Administration. Both doctors generated narrative reports of their findings from their examinations and interviews of Plaintiff (Tr. 259-62, 281-88). The ALJ discusses the findings of both doctors in her decision to deny Plaintiff's applications for disability benefits (*see* Tr. 21-23). The ALJ gave significant weight to Dr. Hartman's opinion in establishing Plaintiff's RFC (Tr. 22). The ALJ did not state how she weighed the opinion of Dr. Muenz, but she thoroughly discussed a number of his findings (Tr. 21-22), which the undersigned finds are in accord with the established RFC.[4]

The opinions of examining medical sources are entitled to consideration by the ALJ, who must weigh the opinion evidence for consistency with the record and supportability of the opinion, must factor the length and nature of treatment, if any, and must factor the area

---

[4] Plaintiff argues that Dr. Muenz limited Plaintiff to only sedentary work, but this argument misconstrues the record evidence (*see* P's Brief at 10; Tr. 284). Dr. Muenz conducted an examination of the Plaintiff on May 10, 2005 (Tr. 282-285). In his report, Dr. Muenz specified he was only provided three pages of VISTA Electronic Medical Documentation to review, so the report was based solely on those reports, Plaintiff's physical examination, and what Plaintiff told Dr. Muenz (Tr. 284). The ALJ's opinion reveals a detailed discussion of Dr. Muenz's findings, including Dr. Muenz's opinion that Plaintiff was capable of working (Tr. 22). Dr. Muenz actually stated that "there does not appear to be the objective evidence to preclude him from activities that are necessary for gainful employment in *at least* a sedentary position" (Tr. 284) (emphasis added).

of expertise of the source giving the opinion. 20 C.F.R. § 404.1527(d). Examining sources, however, are not entitled to the differential weight that may be afforded to a long term treating physician. 20 C.F.R. § 404.1527(d)(2).

In this case, the opinions expressed by Dr. Hartman and Dr. Muenz are not entitled to differential treatment, but were, in fact, properly considered in conjunction with the other evidence of record (Tr. 21-23).[5] Accordingly, the Court finds no error in the ALJ's weighing of this opinion evidence and no error with the development of the record.

## CONCLUSION

Thus, upon review of the ALJ's decision and the underlying record, the Court finds substantial evidence supports the ALJ's factual findings which were made in accordance with the applicable law and Regulations. For the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of March, 2010.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

---

[5]The Court notes there were no opinion reports from treating sources contained in the record. However, Plaintiff's progress notes from the Brevard Veteran's Administration OPC and the Jacksonville Veteran's Administration OPC reveal repeated diagnoses of dysthymic disorder from 2003 through 2005, and reported GAF scores of a low at 50 on June 24, 2004 (Tr. 211) and a high at 70 on October 14, 2004 (Tr. 180) (*see generally*, Tr. 152-258, 316-422).

13